UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-00170-H

DONNA BARKER, and                                                    PLAINTIFFS
JANET deKALANDS, on behalf of themselves
and all other similarly situated individuals

v.

FAMILY DOLLAR, INC.                                                  DEFENDANT


**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Donna Barker and Janet deKalands, brought this case on behalf of themselves

and those similarly situated against Defendant, Family Dollar, Inc., seeking damages and other

available relief for violations of Kentucky's wage and hour laws.  Specifically, Plaintiffs say that

Family Dollar impermissibly classified Plaintiffs as exempt employees under the Kentucky wage

and hour laws, preventing them from receiving the following benefits allowed to nonexempt

employees: 1) overtime pay, 2) mandatory rest breaks, and 3) additional compensation due for

working seven days in a single week.  If the overtime pay claim fails, Plaintiffs charge in the

alternative that Family Dollar unlawfully failed to pay them for all wages earned.

Previously, Defendant moved to dismiss the overtime claim on the grounds that

Kentucky's overtime statute contains an exclusion for retail store employees.  This Court denied

that motion, holding that absent any discovery, the parties had not yet presented enough evidence

to determine whether the retail exclusion applied.  Presently before the Court is Defendant's

motion for summary judgment as to all four claims and Plaintiffs' cross-motion for partial

summary judgment as to Defendant's liability on all four claims.  The parties have exchanged

and filed significant discovery with the Court, and the Court is now in a position to rule.  For the

reasons that follow, the Court grants Defendant's motion for summary judgment and denies

Plaintiffs' cross-motion for partial summary judgment.

I.

Family Dollar is a national corporation, operating 6,000 discount retail stores in 44 states

across the United States.  The base of Family Dollar's employment hierarchy rests with the

individual store. Cashiers/clerks report to assistant managers, who report to store managers.  The

number of clerks employed and even whether that store has an assistant manager depends on the

store's location and sales volume.  Store managers report to district managers, who are

responsible for a number of stores in a particular geographical area.  District managers report to

regional vice presidents, who report to the corporate executives of Family Dollar, Inc.

Plaintiffs were both store managers.  Donna Barker began working as an assistant

manager in August 2005 and became a store manager in December 2006.  She reported to

Sheldon Thomas, who as district manager oversaw approximately 15 stores.  Family Dollar paid

Barker a salary of $650 per week.  She worked on average 60 hours per week, making her

average hourly salary $10.83 per hour.  During her time at Family Dollar, Barker also received a

bonus of $364. At any given time, somewhere between five and nine other employees worked

with her in the store.  Between December 10, 2006 and June 3, 2007, a total of thirteen

nonexempt employees worked at her store.  Eleven made $7.00 per hour or less, and the highest

hourly wage was under $8.50 per hour.  Barker resigned in June 2007.

Janet deKalands become a store manager in April 2005, after having worked for Family Dollar as both a cashier and an assistant manager. She managed two different stores during her tenure. From April 2005 until August 2009, Family Dollar paid deKalands a salary of $515 per week, and from August 2009 until Family Dollar terminated her employment in October 2009, she received $560 per week. She worked an average of 62 to 64 hours per week, making her hourly salary before she received her raise $8.04 per hour (64-hour week) and $8.30 per hour (62-hour week). After receiving her raise, Family Dollar paid her $8.75 (64-hour week) and $9.03 (62-hour week). She also received a number of bonuses: $809.42 in December 2005, $1,571.09 in December 2006, $149.88 and $1,194.66 in September 2007, $719.54 in September 2008, and $1,091.92 in September 2009. DeKalands reported to District Manager Nola Greer, who oversaw 14 to 15 stores. At any given time, two to three other employees worked with Plaintiff at either store. Between May 27, 2007 and October 21, 2009, seventeen nonexempt employees worked at deKalands' store. Fifteen made $7.00 per hour or less, and the highest hourly wage was under $9.00 per hour.

Kentucky wage and hour laws classify employees in two categories: exempt and nonexempt. Exempt employees are either excluded from the relevant statutory definition of employee or specifically exempt from the particular statutory protection. They do not enjoy the statutory benefits of the wage and hour laws. Nonexempt employees, however, are entitled to many of those benefits, including overtime pay, rest breaks, and additional compensation for working on the seventh day in a single workweek. Characterizing them as store managers, Family Dollar treated Barker and deKalands as exempt employees. Plaintiffs argue they were store managers in name only. Instead of managing stores, Plaintiffs say they performed the same

duties as clerks or assistant managers, but did not receive the corresponding nonexempt benefits. Now they seek recompense for Family Dollar unlawfully withholding their earned benefits.

Thus, the driving inquiry in these motions is whether Plaintiffs were functionally store managers. This question turns on the specific statutory provisions and the responsibilities and duties Barker and deKalands maintained.  According to the Family Dollar "Job Description & Requirements" form, store managers are "[r]esponsible for [] the overall daily operation of a store including hiring, development, supervision, discipline, and safety of Assistant Store Managers (ASMs) and Clerks in order to meet district and store objectives."  Defendant argues that this is an accurate general description of every store manager's duties.  Plaintiffs disagree.

According to the deposition testimony of both deKalands and Barker, the primary responsibilities of store managers were to sell merchandise and assist customers.  To do so, Plaintiffs spent 80-90% of their time on non-managerial tasks, such as waiting on customers, cleaning the store, and stocking the shelves.  Family Dollar's policy of not working their hourly employees more than 40 hours per week meant that store managers had to work more hours performing nonexempt duties.

In sum, Plaintiffs argue that by classifying Plaintiffs as exempt employees, Family Dollar could avoid providing store managers those benefits to which nonexempt employees are entitled. Even though Plaintiffs worked on average between 60 and 64 hours per week, including weekends, they were not compensated time-and-a-half for time worked over 40 hours in a single week or for hours worked on the seventh day of the week, benefits nonexempt employees enjoy under Kentucky law.  *See* KRS § 337.285; KRS § 337.050; KRS § 337.385.   Most employees are also entitled to a ten-minute break period every four hours in Kentucky, but Plaintiffs

4

contend that as store managers, they never truly took these breaks because they were always on duty.  *See* KRS § 337.365.

In the alternative Plaintiffs argue if they are not entitled to overtime payments, Family Dollar still owes them unpaid compensation.  Specifically, Plaintiffs contend that Defendant set their salaries at a rate to compensate them for working 52 hours per week.   Because they frequently worked well in excess of 52 hours per week, Plaintiffs argue that they are entitled to payment for that additional time under a Kentucky statute that requires payment for all hours worked.

Both Plaintiffs and Defendant have moved for summary judgment.  The Court must decide these issues as a matter of fact and law.

II.

Turning to the merits of the summary judgment motion, Plaintiffs' first claim concerns whether they are entitled to overtime pay for hours worked over 40 hours in a single week in violation of KRS § 337.285.  This statute reads,

> No employer shall employ any of his employees for a work week longer than forty (40) hours, unless such employee receives compensation for his employment in excess of forty (40) hours in a work week at a rate of not less than one and one-half (1-1/2) times the hourly rate at which he is employed.

KRS § 337.285(1).  This statute is enforced through KRS § 337.385, which provides,

> Any employer who pays any employee less than wages and overtime compensation to which such employee is entitled under or by virtue of KRS 337.020 to 337.285 shall be liable to such employee affected for the full amount of such wages and overtime compensation, less any amount actually paid to such employee by the employer, for an additional equal amount as liquidated damages, and for costs and such reasonable attorney's fees as may be allowed by the court.

5

KRS § 337.385(1).  Both parties agree that Plaintiffs worked well in excess of 40 hours per week

without additional compensation.  However, Defendant argues that Plaintiffs are excepted under

the retail exemption listed in KRS § 337.285[1] or excluded from the applicable definition of

employee under KRS § 337.010(2).  The Court finds this second argument particularly

persuasive.

Under Kentucky's wage and hour laws, an employee is generally defined as "any person

employed by or suffered or permitted to work for an employer." KRS § 337.010(1)(e).

However,

> [a]s used in KRS 337.275 to 337.325 . . . , unless the context requires otherwise:
> (a) "Employee" is any person employed by or suffered or permitted to work for
> an employer, but shall not include: . . . 2. Any individual employed in a bona
> fide executive, administrative, supervisory, or professional capacity, or in the
> capacity of outside salesman, or as an outside collector as the terms are defined
> by administrative regulations of the commissioner.

KRS § 337.010(2).  In sum, this statute provides for an exclusion from the overtime benefits for

executives, administrators, supervisors, or professionals.

Although Kentucky wage and hour laws in large part mirror the federal wage and hour

laws, two rules of statutory construction unique to Kentucky place Plaintiffs at a "double

disadvantage" regarding these exclusions.  *See Johnston v. Robert Bosch Tool Corp.*, No. 3:08-

CV-33-DW, 2008 WL 4534109, at * 23 (W.D. Ky. Oct. 7, 2008).  First,  the employee bears the

burden to prove that he or she is in fact an employee and within the scope of the Kentucky wage

---

[1]	In its previous motion to dismiss, Defendant asserted that Plaintiffs were not entitled to overtime pay because of the following language in the overtime statute: "This provision shall not apply to the following: (a) Employees of retail stores engaged in work connected with selling, purchasing, and distributing merchandise, wares, goods, articles, or commodities."  KRS § 337.285(2).  This Court held that the pleadings alone presented insufficient proof  that Plaintiffs engaged in work 1) connected with 2) purchasing merchandise, to satisfy this retail exception.  Although significant discovery has occurred since this Court rendered that opinion, this Court will not address the retail exception because the case is decided on other grounds.

and hour laws, whereas under the federal Fair Labor Standards Act ("FLSA"), the burden falls squarely on the employer. *City of Louisville, Div. of Fire v. Fire Serv. Managers Ass'n*, 212 S.W.3d 89, 94-95 (Ky. 2006); KRS § 337.285. Second, under the FLSA, exemptions are narrowly construed. *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 578 (6th Cir. 2004). Because the executive, administrative, supervisory and professional exceptions under Kentucky law are not exemptions but rather exclusions, Plaintiffs do not enjoy this favorable construction; the exclusions are not narrowly construed.[2]  *City of Louisville*, 212 S.W.3d at 95.

Knowing these rules, the Kentucky Department of Labor promulgated regulations further defining the exclusions, each of which is treated as a separate and distinct exception.[3]  Defendant argues that Plaintiffs fall into the executive and the supervisor exclusions.

---

[2]      Plaintiffs rely heavily on *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008) in support of their conclusion that Family Dollar store managers are entitled to overtime pay. In that case, the Eleventh Circuit held that Family Dollar store managers were managers in name only, and should be afforded the benefits of overtime pay. The analysis here is different for several reasons. Most importantly, the store managers in *Morgan* brought their claims under the FLSA. The Court emphasized that under the FLSA, the burden of proof is on the employer and the exemptions are to be narrowly construed. *Id.* at 1269. Moreover, the FLSA does not contain the supervisory exception on which this Court presently relies.

[3]      The Court will not consider the administrator or professional employee exclusions. Under the Department of Labor regulations, an administrative employee is an individual "[w]hose primary duty is the performance of office or nonmanual work directly related to the management or general business operations of the employer or the employer's customers." 803 KY. ADMIN. REGS. 1:070 § 3(1)(b). As already stated, Plaintiffs devoted 80-90% of their time to performing manual work, the purpose of which was not related to the business operations of Family Dollar. A professional employee is one "[w]hose primary duty is the performance of work: 1. Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or 2. Requiring invention, imagination, originality, or talent in a recognized field of artistic or creative endeavor." 803 KY. ADMIN. REGS. 1:070 § 4(1)(b). The skill set for a Family Dollar store manager is not specialized and does not require any unique inventiveness or originality. Defendant does not argue, nor could it, that Plaintiffs fall into either the administrator or professional exclusions. Accordingly, the Court only addresses the other exclusions.

This Court finds the latter exclusion the most applicable.[4]  The supervisor exclusion applies to any employee

> (1)  Whose primary duty consists of customarily and regularly directing the work of two (2) or more other employees, as defined in Section 2(5) of this administrative regulation, where he is employed; and

> (2)  Who is compensated for his services on a salary basis at a rate of not less than $455 per week, exclusive of board, lodging, or other facilities.

803 KY. ADMIN. REGS. 1:070 § 5.

Guidance in this area of overtime exclusions is limited.  Few Kentucky cases turn on the supervisor exclusion alone.  Moreover, the FLSA does not contain a supervisor exemption, so helpful federal case law is sparse.  29 U.S.C.A. § 213(a).  This Court will thus consider related regulatory definitions, extant Kentucky case law, and the plain meaning of the statute.

### III.

---

[4]     While Defendant argues vigorously that Plaintiffs fall into the executive exclusion, this Court need not analyze this contention.  Under the Kentucky wage and hours laws, a bona fide executive is an employee:

> Compensated on a salary basis at a rate of not less than $455 per week, exclusive of all board, lodging or other facilities;

> (a)  Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department and subdivision thereof;

> (b)  Who customarily and regularly directs the work of two (2) or more other employees; and

> Who has the authority to hire or fire other employees or whose suggestions and recommendations . . . are given particular weight.

803 KY. ADMIN. REGS. 1:070 § 2(1).  Plaintiffs are more appropriately characterized as supervisors for two reasons.  First, common sense tells us that Plaintiffs are more accurately titled supervisors than executives.  An executive is someone with ample discretion and authority to lead an employee or an entire department toward a new or established goal.  A supervisor, however, monitors the actions of others and ensures compliance with whatever program a company has in order for those employees.  Plaintiffs in this case are not executives according to the plain meaning of the term.  They are constrained by the oversight of the district managers and the extremely detailed Family Dollar handbooks and policy guides.

Second, the executive exclusion, as defined under the regulations, incorporates the salary and "directing two or more persons" elements of the supervisor exception, but requires much more.  Because the Court finds that Plaintiffs satisfy the two supervisor elements, there is no need to engage in a deeper analysis of additional elements when the Plaintiffs are already properly excepted under another exclusion.

The first prong of the supervisor exclusion requires three separate findings: 1) that the employee directed the work of two or more other employees; 2) that the employee did so regularly and customarily; and 3) that such supervision was the employee's primary duty. This Court will consider each element separately. The first two are quite straightforward; the third is not so.

A.

The first element involves two separate requirements. First, the employee in question must direct other employees. As store managers, Plaintiffs dealt regularly with employees and truck deliveries. They set employee schedules, albeit within the confines of budgetary constraints that prevented store managers from scheduling employees to work for more than 40 hours per week. Plaintiffs apportioned job responsibilities among those employees working in a single shift. When an employee was tardy or absent, the store manager adapted the schedule or the work assignments of those employees present in the store. When truck deliveries were on time, the store manager led the unloading process. When the truck deliveries were late, the store manager adjusted her own or other employees' duties. These responsibilities satisfy the requirement that Plaintiffs direct other employees.

Next, the employee must direct two or more other employees. The regulations define "two or more other employees" as "two (2) full-time employees or their equivalent. One (1) full-time and two (2) half-time employees, for example, are equivalent to two (2) full-time employees. Four (4) half-time employees are also equivalent." 803 KY. AMIN. REGS. 1:070 §§ 5(1), 2(5). According to Plaintiffs' deposition testimony, the clerks and assistant managers working with them were part-time employees. *See* Depo. Barker at 185:1, Aug. 9, 2011. Barker

9

and deKalands always had more than four part-time employees working under them at the Family Dollar store they managed, satisfying the second requirement.

Accepting these responsibilities as accurate from both Plaintiffs' depositions and other evidence presented, the Court holds that Plaintiffs clearly did direct two or more other employees. Plaintiffs did not meet their burden of showing otherwise.

B.

The employee must also direct other employees regularly or customarily, defined as occurring at "a frequency that shall be greater than occasional but which, may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one (1) time tasks." 803 KY. ADMIN. REGS. 1:070 § 15(2). Trucks made weekly deliveries, and store managers ensured that employees unloaded the truck and stocked the shelves. Store managers set employee work schedules frequently and responded when employees were late or absent as needed. Barker admits that while working as a store manager, she was the one person in the store who knew best what Family Dollar expected. If a clerk needed assistance with the cash register, the employee would seek guidance from store managers. If a customer had an immediate question, the store manager would often answer it. At the end of the week, the store managers made sure the recovery was completed correctly. Additionally, the store manager oversaw clerks handling refunds, markdowns, and checks when needed. Larger problems are addressed at the district manager level but still had to filter through the store managers.

Consequently, this Court holds that Plaintiffs' duties for directing employees were regular and customary as defined under the Kentucky regulations.

10

C.

Plaintiffs' principal argument contesting the supervisory exception is that their supervisory duties were not their primary duties. The regulations define a primary duty as "the principal, main, major, or most important duty that the employee performs." 803 KY. ADMIN. REGS. 1:070 § 15(1)(a). Plaintiffs' statements as to their primary duties are not conclusive; Plaintiffs have the burden to prove these assertions with sufficient evidence. *See, e.g.*, *Stathers v. Ice Cream Distribs. of Evansville, LLC*, No. 3:06-CV-526-S, 2007 WL 3342498, at *2 (W.D. Ky. 2007) (holding that the route supervisor at an ice cream distributorship was a supervisor for purposes of KRS § 337.010(2)). The Court must focus on the facts of this particular case and emphasize the nature of Plaintiffs' positions as a whole. *Johnston*, 2008 WL 4534109, at *27.

The regulations direct the court to consider the following four factors in determining whether the exempt duties at issue are primary: "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 803 KY. ADMIN. REGS. 1-070 § 15(1)(a). The analysis of these factors is not necessarily straightforward. Much depends on the relative importance one attaches to the scope of Plaintiffs' exempt responsibilities. The Court will consider this issue first.

1.

The exempt duties the Court focuses on here are those relating to supervision. The store managers' most important duties are ensuring that the store runs smoothly and that company policies are followed. The store manager constantly remains responsible for correcting

11

problems, including scheduling employee work hours and making adjustments where required. If they fail in this responsibility, the store cannot long remain open for business. These exempt duties are far more crucial to store operations than the nonexempt duties store managers must perform, such as cleaning the store, running the cash register, and unloading the truck. In contrast to the nonexempt duties store managers are charged to perform, without the store managers carrying out their exempt duties, the Family Dollar store could not function. *Cf. Thomas v. Speedway SuperAmerica, LLC,* 506 F.3d 496, 505 (6th Cir. 2007)("If Thomas failed to perform her nonmanagerial duties, her Speedway station would still function, albeit much less effectively. . . . If, however, Thomas failed to perform her managerial duties, her Speedway station would not function at all because no one else would perform these essential tasks."). This factor weighs heavily in favor of categorizing the exempt duties as primary.

2.

The second factor relates to the amount of time spent performing exempt work. Plaintiffs allege that 80-90% of store managers' time is devoted to non-managerial, nonexempt work. While the regulations suggest that the relevant employee perform exempt work at least 50% of the time, the regulations also caution that "time alone, is not the sole test, and nothing in this subsection requires that exempt employees spend more than fifty (50) percent of their time performing exempt work." 803 KY. ADMIN. REGS. §15(1)(b). Indeed, "the time factor is less momentous, and might even be 'somewhat misleading,' where 'the employee's management and non-management functions are [not] . . . clearly severable.'" *Thomas*, 506 F.3d at 504 (quoting *Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982))(construing the definition of "primary duty" under the FLSA). Regarding the executive exclusion, the regulations state that

12

"[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of this administrative regulation are otherwise met."  803 KY. ADMIN. REGS. 1:070 § 2(7)(a).  Te Court finds this statement equally applicable to the primary duty element of the supervisory exclusion.

While a store manager may spend an entire morning unloading the trucks or running the cash register, she is simultaneously responsible for supervising the other employees.  Thus, while the time factor certainly is important, it is not conclusory.  Due to the concurrence of supervisory and regular duties, the 80%-90% figure can be misleading as to what responsibilities are primary.  Therefore, the Court will not accord the time factor an undue amount of weight.  *See Thomas*, 506 F.3d at 504 ("Under these circumstances–where an employee 'manage[s] while at the same time performing non-exempt tasks normally assigned to [subordinate employees],'-we refuse to give undue weight to the time factor of the 'primary duty' inquiry.")(quoting *Sturm v. TOC Retail, Inc.*, 864 F.Supp. 1346, 1352 (M.D. Ga. 1994)).

### 3.

The third factor concerns Plaintiffs' freedom from direct supervision.  Defendant admits that the Family Dollar corporate structure is systematic and strictly defined.  Although Plaintiffs felt inhibited by Family Dollars' detailed policy manuals and district manager oversight, store managers were ultimately in charge of the store as it related to the clerks and assistant managers.  District managers visited only once or twice a month for a few hours at a time.  While the most important decisions were made at the district manager level or higher, the store managers worked in the store over 60 hours per week and almost every day, and when they were not in the building, store managers were still the highest level employees responsible for that particular

13

store on a daily basis.  The fact that district managers maintained constant availability does not imply that district managers maintained constant contact with or supervision over the store managers themselves.  *Thomas*, 506 F.3d at 506. Plaintiffs were thus relatively free from direct personal supervision.

4.

Finally, the Court considers the wages paid to exempt employees as compared to non-exempt employees.  This factor does not clearly weigh in favor of or against the conclusion that Plaintiffs were supervisors.  On the one hand, Family Dollar paid Barker $10.83 per hour, and the next highest paid hourly employee in her store received less than $8.50 per hour, with the average hourly salary of $6.70 per hour.  These figures show that Family Dollar paid Barker a significant amount more than her hourly employees.  If she spent 80-90% of her time performing the same duties as her hourly employees, clearly Family Dollar appreciated her exempt duties as reflected in the difference in their hourly pay rates.

On the other hand, deKalands earned $8.04 per hour for a 64-hour week and $8.30 per hour for a 62-hour week, and an average of $8.75 per hour for a 64-hour week and $9.03 per hour for a 62-hour week after her raise.  The highest hourly employee rate was around $9.00, which is higher than most of her hourly salary rates.  This counterbalances Barker's significant pay differential.  However, the average pay rate of hourly employees at the first store was $6.63 and at the second store was $7.34.  Also, when one considers that deKalands received no less than six bonuses, the amount Family Dollar actually paid her was well in excess of the hourly employees' hourly wage.  For that reason, deKalands' experience does not negate the fact that

14

Family Dollar paid the store managers more, and for Barker significantly more, than the hourly employees.

Weighing each of these factors, and considering both sides of this issue, the only factor which might strongly favor Plaintiffs is the time associated with non-exempt work. The Court has explained why this factor alone is not conclusive. The Court finds that the Plaintiffs have failed to meet the burden to show that their supervisory duties were not their primary duties. Therefore, Plaintiffs do not satisfy the first prong of the supervisory exclusion.

D.

The second prong requires that the exempt employee receive a salary of over $455 per week. Both sides agree that Plaintiffs received a pay rate much higher than this statutory threshold, but Plaintiffs argue that the compensation they received was not in fact a salary. According to the regulations, a salary cannot be increased or decreased based on the "quality or quantity of the work performed." 803 KY. ADMIN. REGS. 1:070 § 10. Plaintiffs argue that when asking off for work, district managers consented only on the condition that the time off be deducted from sick days or vacation time, thus docking their salaries based on the lack of work performed. Indeed, on one occasion, deKalands asked if she could work only ten hours in a week and still be paid the entire amount of her salary, to which her district manager responded that deKalands would have to take sick or vacation pay.

An isolated incident does not undermine the conclusion that Family Dollar paid Plaintiffs a set rate regardless of the number of hours worked. Moreover, a full-time employee working only ten hours in a single week is subject to the reasonable expectation that her employer will not compensate her for an entire week's worth of work. Plaintiffs' argument is a stretch at best. The

evidence establishes clearly that Family Dollar paid Plaintiffs a salary amounting to more than the $455 statutory minimum.

Consequently, the Court holds that the second prong of the supervisory exception is satisfied, and Family Dollar properly characterized Plaintiffs as excluded from the statutory definition of employee, excepted from receiving certain benefits under Kentucky's wage and hour laws. Plaintiffs have failed to show otherwise.

IV.

Though they do not meet their burden to avoid the supervisory exclusion, Plaintiffs make three other arguments which might allow them to prevail.  The Court will consider each.

A.

Plaintiffs argue that the statutory language of the definition of employee provides an alternate route that saves their claim.  The statutory exclusions from the definition of employee are delineated in KRS § 337.010(2).  However, the introductory clause to the exclusion list contains a catch-all provision entitling excluded employees to non-exempt status where "the context requires otherwise."  KRS § 337.010(2).  Plaintiffs rely on *Healthcare of Louisville v. Kiesel*, 715 S.W.2d 246 (Ky. Ct. App. 1986) in postulating that Kentucky courts have invigorated this clause with substance.  The Court of Appeals held that an exempt medical director nonetheless was entitled to protections of the Kentucky wage and hour regime, because "it is just as unlawful to fail to pay or to withhold a part of the salary of an executive, administrative, supervisory or professional employee as it would be to do so in the case of any other type of employee." *Kiesel*, 715 S.W.2d at 248 (quoting the trial court).

16

Most courts have found the holding in *Kiesel* inapplicable, particularly where the employee falls into an expressly named category of employee. *See Rawlings v. Breit*, No. 2003-CA-002785-MR, 2005 WL 1415356, at *7 (Ky. Ct. App. June 17, 2005). To hold otherwise would render the exclusions in KRS § 337.010(2) meaningless, unless the Plaintiffs showed some unique circumstances justifying the complete nullification of KRS § 337.010(2). *Whitewood v. Robert Bosch Tool Corp.*, 323 F.App'x 397, 402 (6th Cir. 2009). Moreover, aside from the statement quoted above, the *Kiesel* court provided no insight into why that particular situation "required otherwise," leaving no guidelines to determine when circumstances are sufficiently unique. Here, Plaintiffs have likewise failed to provide grounds warranting "required otherwise" treatment. Accordingly, the Court concludes that the present circumstances do not meet the "context requires otherwise" provision, whatever it may mean.

B.

Next, Plaintiffs argue that former provisions grandfathered into the current wage and hour law regime entitle them to overtime pay. In 1974, the Kentucky General Assembly passed legislation amounting to a major overhaul of Kentucky's wage and hour laws. *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354, 360 (Ky. 2005). As part of this legislation, the legislature included a grandfather clause that maintained the effectiveness of more employee-friendly statutes affected by the Wage and Hour Act. The grandfather clause reads,

> Any standards relating to minimum wages, maximum hours, overtime compensation, or other working conditions, in effect under any other law of this state which are more favorable to employees than standards applicable hereunder shall not be deemed to be amended, rescinded or otherwise affected by KRS 337.275 to 337.325, 337.345, and 337.385 to 337.405 but shall continue in full force and effect until they are specifically superseded by standards more favorable to such employees by operation of or in accordance

17

with KRS 337.275 to 337.325, 337.345, and 337.385 to 337.405 or regulations
issued thereunder.

KRS § 337.395.  Plaintiffs argue that KRS § 337.380, a more employee-friendly statute, should

be grandfathered in to the present wage and hour law regime.

KRS § 337.380 prohibited females from working in certain types of jobs for more than 60

hours per week.  Plaintiffs argue that this statute should serve as the existing standard for female

employees.  This argument fails for three reasons.  First, the 1974 Wage and Hour Act

eliminated Kentucky's gender discriminatory wage and hour laws.  *Parts Depot*, 170 S.W.3d at

360.  The grandfather clause provides that those standards "in effect" should continue in force.

The Act expressly repealed, not amended or rescinded, the female maximum hour law.  As a

result, the statute was no longer "in effect" such that its force could continue.  Second, if the

Court continued to enforce a statute that the General Assembly explicitly repealed, the Court

would effectively undermine legislative intent and invade constitutionally prescribed boundaries

between the judicial and legislative branches of the government.  Finally, a statute limiting

female work hours is outdated, discriminatory on its face and likely a violation of the Equal

Protection Clauses of both the United States Constitution and the Kentucky Constitution.  This

Court refuses to enforce KRS § 337.380 under KRS § 337.395.

## C.

Finally, Plaintiffs argue that if they are not entitled to overtime pay, they are nonetheless

entitled to payment for all hours worked under KRS § 337.020, which states,

> Every employer doing business in this state shall, as often as semimonthly, pay
> to each of its employees all wages or salary earned to a day not more than
> eighteen (18) days prior to the date of that payment. . . .  Every such employee
> shall have a right of action against any such employer for the full amount of his

> wages due on each regular pay day.  The provisions of this section do not
> apply to those individuals defined in KRS 337.010(2)(a)(2).

KRS § 337.020.  The last sentence of this statute refers to the definition of employee discussed

above that explicitly excludes bona fide executives, administrators, supervisors, and

professionals.  Because this Court has already held that Plaintiffs are supervisors for purposes of

 KRS 337.010(2)(a)(2), and perhaps even executives,[5] Plaintiffs are not entitled to the benefits of this

statute.[6]

## V.

Plaintiffs' next specific claim is that Family Dollar violated their right to a ten-minute

rest break every four hours, as required under KRS § 337.365.  This statute reads,

> No employer shall require any employee to work without a rest period of at
> least ten (10) minutes during each four (4) hours worked, except those
> employees who are under the Federal Railway Labor Act. This shall be in
> addition to the regularly scheduled lunch period. No reduction in compensation
> shall be made for hourly or salaried employees.

KRS § 337.365.[7]  According to the plain meaning of KRS § 337.365, employers could not

prevent employees from taking rest breaks or require them to work without rest breaks.

Plaintiffs provide no evidence that Family Dollar had a policy in place that denied store

managers the opportunity to take rest breaks.  In fact, as store managers and the highest ranking

employees in the store at any given time, except for the few hours every other week or once a

---

[5] *See supra* note 4.

[6] This is not to say that Plaintiffs would be entitled to the money even if they did not fall into either the supervisor exclusion or executive exclusion.

[7] Plaintiffs have a private cause of action against an employer for violations of KRS § 337.365 through KRS § 446.070. *England v. Advance Stores Co. Inc.*, 263 F.R.D. 423, 441 (W.D. Ky. 2009).  This statute provides, "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." KRS § 446.070.

month when the district manager was present, Plaintiffs were in charge of their own time.

Additionally, Family Dollar informed Plaintiffs of the mandatory rest break requirement in

Kentucky via e-mails to store managers.  Absent some company policy preventing breaks, if

Plaintiffs did not take enough rest breaks, it is difficult to say who is responsible.

Moreover, deposition testimony reveals that Plaintiffs in fact often took breaks.  Plaintiffs

argue that even when taking rest breaks, they were still responsible for the store, effectively

negating the purpose of a break.  However, an employee can simultaneously take a rest break

and maintain responsibility of the store; these are not mutually exclusive activities.

This Court holds that Family Dollar did not prevent Plaintiffs from taking their

mandatory rest breaks.  Therefore, Plaintiffs' rest break claim fails as a matter of law.

## VI.

Plaintiffs argue that Family Dollar violated Kentucky law by failing to adequately

compensate Plaintiffs for working seven days in a week.  Under Kentucky law, employers must

pay employees time-and-a-half for hours worked on the seventh day of the week, if the employee

works all seven days in one week.  KRS § 337.050.[8]  Both parties agree that Plaintiffs often had

---

[8] The statute provides in full,

(1) Any employer who permits any employee to work seven (7) days in any one (1) workweek shall pay him at the rate of time and a half for the time worked on the seventh day. For the purposes of this subsection, the term "workweek" shall mean a calendar week or any other period of seven (7) consecutive days adopted by the employer as the workweek with the intention that the same shall be permanent and without the intention to evade the overtime provision set out herein.

(2) (a) Subsection (1) shall not apply in any case in which the employee is not permitted to work more than forty (40) hours during the workweek. In that case the employer may credit against the overtime payable under this section any overtime paid by him to the employees for the same hours under the requirements of any other law or contract.

(b) Subsection (1) shall not apply to telephone exchanges having less than five hundred (500) subscribers, nor to stenographers, bookkeepers, or technical assistants of professions such as doctors, accountants, lawyers, and other professions licensed under the laws of this state, nor to any employees subject to the Federal Railway Labor Act and seamen or persons

to work seven days a week and did not receive additional compensation for that time.

Defendant nevertheless contends that Plaintiffs are not entitled to this additional pay for two reasons.  First, Defendant relies on a Kentucky Attorney General Opinion that states that if an employer qualifies for an exception under KRS § 436.160[9], then the employees are not entitled to the benefits of KRS § 337.050.  KRS § 436.160 is Kentucky's Working on Sunday law prohibition, which provides that Kentucky employers may not force employees to work on Sundays unless the employer meets one of several exceptions.  One such exception is for employers using continuous work scheduling. The exception excludes those employers "who routinely operate [their] business for a substantial period of time each and every day of the week

---

> engaged in operating boats or other water transportation facilities upon navigable streams, nor to persons engaged in icing railroad cars, nor to common carriers under the supervision of the Department of Vehicle Regulation.
>
> (3) "Employee" as used in subsection (1) does not include any officer, superintendent, foreman, or supervisor whose duties are principally limited to directing or supervising other employees.

KRS § 337.050.

[9] This statute provides in full,

> (1) Any person who works on Sunday at his own or at any other occupation or employs any other person, in labor or other business, whether for profit or amusement, unless his work or the employment of others is in the course of ordinary household duties, work of necessity or charity or work required in the maintenance or operation of a public service or public utility plant or system, shall be fined not less than two dollars ($2) nor more than fifty dollars ($50). The employment of every person employed in violation of this subsection shall be deemed a separate offense.
>
> (2) Persons who are members of a religious society which observes as a Sabbath any other day in the week than Sunday shall not be liable to the penalty prescribed in subsection (1) of this section, if they observe as a Sabbath one (1) day in each seven (7).
>
> (3) Subsection (1) of this section shall not apply to amateur sports, athletic games, or operation of grocery stores whose principal business is the sale of groceries and related food items, drug stores whose principal business is the sale of drugs and related drug items, gift shops, souvenir shops, fishing tackle shops and bait shops, moving picture shows, chautauquas, filling stations, or opera.
>
> (4) Subsection (1) of this section shall not apply to employers using continuous work scheduling provided that such scheduling permits at least one (1) day of rest each calendar week for each employee.

KRS § 436.160.

. . . if each of [their] employees is allowed at least one full day off during the calendar week."

*Commonwealth v. Southerland*, 601 S.W.2d 908, 908 (Ky. 1980). If Defendant satisfied this

exclusion, then the Kentucky Attorney General declared that "KRS 337.050 will not come into

play." 1995 Ky. Op. Att'y Gen. 2-144, at *3 (1995).  Because Defendant admits that it did not

meet this condition by allowing Plaintiffs to work all seven days in a single week, KRS §

337.050 still operates against this employer.  Accordingly, even if this Court agreed with the

Attorney General Opinion, Defendant's first argument contesting Plaintiffs' rights to overtime

pay for working on the seventh day fails.

      Second, Defendant argues that Plaintiffs do not qualify for overtime pay for the seventh

day worked because they fall within the supervisor exception of the statute.  The supervisor

exception under this statute is different from the supervisor exception under the general overtime

statute.  This exception reads, "'Employee' as used in subsection (1) does not include any

officer, superintendent, foreman, or supervisor whose duties are principally limited to directing

or supervising other employees."  KRS § 337.050(3).  Unlike the supervisor exception under the

general overtime statute, which requires that the employee's principal duty is to regularly direct

two or more employees, the language in this exception requires that the employee's duties be

principally limited to directing other employees.  This difference is important, because the

exception in this statute doe not apply to these Plaintiffs.

      Both parties agree that Plaintiffs spent 80-90% of their time performing manual labor and

tasks required of hourly employees, including running cash registers, stocking shelves, unloading

trucks, attending customers, and cleaning the store.  While Plaintiffs' principal duty is to

supervise, the fact that 80-90% of Plaintiffs' time was devoted to nonexempt activities alone

supports the conclusion that Plaintiffs' duties were not principally limited to supervision. Accordingly, Defendant's second argument also fails, because the supervisor exception does not apply to Plaintiffs.

Because the Working on Sunday law does not render KRS § 337.050 null, and Plaintiffs are employees under the statute, the Court must now decide whether Family Dollar violated the seventh day statute. KRS § 337.050 requires employers to pay overtime rates to employees who work seven days in a single workweek for those hours worked on the seventh day. To enforce this statute, Plaintiffs must rely on KRS § 337.385. That statute imposes liability on employers who fail to adequately compensate employees for violations of KRS § 337.020 to 337.285. KRS § 337.385. The statutory definition of employees under KRS § 337.010(2) limits the ability to recover under KRS § 337.385. *See* KRS § 337.010(2)("As used in . . . KRS 337.385 to 337.405 . . . , unless the context requires otherwise: (a) 'Employee' is any person employed by or suffered or permitted to work for an employer, but shall not include: . . . 2. Any individual employed in a bona fide . . . supervisory . . . capacity."); *Thornton v. W. & S. Fin. Grp. Beneflex Plan*, 797 F.Supp. 2d 796, 810-11 (W.D. Ky. 2011)(holding that KRS § 337.010(2) limits the scope of KRS § 337.055, which must also be enforced through KRS § 337.385). As discussed at length above, Plaintiffs fall into the supervisor exception of KRS § 337.010(2), such that they are excluded from the benefits provided in KRS § 337.385. For this reason, Plaintiffs' claim for overtime pay for the seventh day worked also fails.

For the reasons stated herein, and otherwise being sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is SUSTAINED and Plaintiffs' claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiffs' motion for partial summary judgment is

DENIED.

This is a final and appealable order.

cc:    Counsel of Record